This document was signed electronically on March 31, 2022, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: March 31, 2022



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 20-51377 |
| | ) | |
| EILEEN GAIL KESSLER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adversary Proceeding No. 20-05057 |
| | ) | |
| | ) | Judge Alan M. Koschik |
| | ) | |
| JULIE ZURN, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EILEEN GAIL KESSLER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM DECISION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Julie Zurn, the duly-appointed Chapter 7 trustee (the "Trustee") in the underlying

bankruptcy case from which this adversary proceeding arises, has filed a complaint seeking

avoidance of a security interest held by defendant Auto Loan, Inc. ("Auto Loan") that was either transferred postpetition or had attached prepetition, but remained imperfected as of the petition date. The security interest encumbers a vehicle owned by debtor Eileen Gail Kessler (the "Debtor"). The Trustee also seeks authority to sell the vehicle for the benefit of the chapter 7 estate.

The Trustee and Auto Loan have filed cross-motions for summary judgment (Docket Nos. 14 and 15, respectively) (the "Motions"). For the reasons set forth herein, Auto Loan's motion for summary judgment (Docket No. 15) (the "Creditor's Motion") will be granted and the Trustee's motion for summary judgment (Docket No. 14) (the "Trustee's Motion") will be denied.

## JURISDICTION AND VENUE

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio. Venue is proper pursuant to 28 U.S.C. § 1409(a). Actions to avoid liens and postpetition transfers, to determine the validity, priority, and extent of liens, and to approve the sale of property of the estate are core proceedings under 28 U.S.C. § 157(b)(2)(A), (K), (N), and (O) and the Court has authority to enter a final judgment.

## SUMMARY JUDGMENT STANDARD

In bankruptcy cases, including adversary proceedings, a party may move for summary judgment at any time before 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise. Fed. R. Bankr. P. 7056 (otherwise incorporating Fed. R. Civ. P. 56); *see also* Fed. R. Bankr. P. 9014(c). When a party so moves, the court "shall grant summary judgment

20-05057-amk    Doc 21    FILED 03/31/22    ENTERED 03/31/22 16:45:14    Page 2 of 16

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). A Plaintiff movant must establish all essential elements supporting its claim in this fashion; a defendant must establish that any one (or more) essential elements of Plaintiff's claim fails, or establish all elements of one or more of defendant's affirmative defenses, in order to obtain a defense judgment by summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Evidence presented in support of summary judgment is viewed in the light most favorable to the non-moving party, "drawing all reasonable inferences in its favor." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986). However, if a moving party meets its burden to establish a lack of genuine dispute as to a material fact, the burden then shifts to the non-moving party to "come forward with evidence which would support a judgment in its favor." *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e). In responding in this way to a motion for summary judgment, the non-moving party may not rely on a "mere scintilla of evidence" in support of its opposition to the motion. There must be enough evidence presented in which a fact-finder could reasonably find for the non-moving party. *Zenith*, 475 U.S. at 586.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties submitted joint stipulations of facts and exhibits for the court to take under advisement (Docket No. 11) (the "Stipulations").

The only affidavit filed by either party in support of either of the Motions was an affidavit by Tiffany Molyneaux (the "Molyneaux Affidavit"), an employee[1] of Auto Loan,

---

[1] Ms. Molyneaux' affidavit did not specify her role or title at Auto Loan.

which substantially duplicated the facts agreed by the parties in the Stipulations. Unless otherwise stated below, the factual background herein is drawn from the Stipulations, and the procedural background from the Stipulations and the Court's own docket.

On July 2, 2020, the Debtor and Klaben Ford Lincoln, Inc. ("Klaben") entered into a retail installment contract and security agreement (Stipulations Ex. A) (the "Loan Agreement"). On the same day, Klaben assigned its interest in the Loan Agreement to Auto Loan. The Debtor entered into the Loan Agreement to finance her purchase of a 2015 Ford Escape (the "Vehicle") from Klaben. Klaben gave the Debtor possession of the Vehicle on the same day that the Debtor signed the Loan Agreement.

On July 14, 2020, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, bearing case number 20-51377 in this Court (the "Main Case"). The Trustee was appointed concurrently.

On July 15, 2020, the Portage County Clerk of Courts issued a certificate of title (Stipulations Ex. B) (the "Title") transferring ownership of the Vehicle from the vehicle's owner, Klaben, to the Debtor. Auto Loan appears on the Title as the "first lien holder," whose lien is dated the same day, July 15, 2020.

Also on July 15, 2020, the Portage County Clerk of Courts issued a memorandum title (Stipulations Ex. C) (the "Memorandum Title"[2]) for the Vehicle, which identified the Debtor as the "owner," Klaben as the "previous owner," and Auto Loan as the "first lienholder." The Memorandum Title states: "date of lien 07/15/2020." All of the pertinent details appearing on the Memorandum Title are consistent with those on the Title itself.

---

[2] The Stipulations designate this document a "memorandum *of* title" (emphasis added), but the face of the document in Exhibit C calls it a "memorandum title."

Auto Loan possesses the Title and the Debtor possesses the Memorandum Title. (Molyneaux Aff. ¶ 7.) At the time of the filing of the Main Case, the Debtor had not made a payment on the loan pursuant to the Loan Agreement, and the unpaid principal owed to Auto Loan was $17,043.97. (*Id.* ¶ 8.)

On September 22, 2020, the Trustee filed her Complaint in this adversary proceeding, seeking a determination that her rights in the Vehicle as a hypothetical judicial lien creditor as of the July 14, 2020 petition date are, pursuant to 11 U.S.C. § 544, superior to Auto Loan's security interest which was perfected by notation on the Title one day later; that the attachment/or perfection of Auto Loan's security interest on the Vehicle was an avoidable postpetition transfer of property of the estate pursuant to 11 U.S.C. § 549; and that the Trustee had the authority to sell the Vehicle pursuant to 11 U.S.C. § 363.

Almost 30 minutes later, also on September 22, 2020, the Debtor filed in her Main Case an amended Schedule C claiming an exemption on the Vehicle pursuant to Ohio Rev. Code § 2329.66(A)(2), (18). (Docket No. 19.) On October 1, 2020, the Trustee filed an objection to the Debtor's claim of exemption in the Vehicle (Main Case Docket No. 21) (the "Objection to Exemption"). On October 21, 2020, the Debtor filed a response to the Objection to Exemption. (Main Case Docket No. 27.)

The Court held a pretrial conference in this adversary proceeding on October 28, 2020, at which the parties agreed that the Complaint and the Objection to Exemption overlapped sufficiently that it was appropriate to consolidate proceedings on them. On November 6, 2020, the Court entered an order consolidating the Objection to Exemption into this adversary proceeding, and setting a discovery schedule and further pretrial conference. (Docket No. 9.)

The Court held a further pretrial conference in this adversary proceeding on January 27,

5

2021, at which time the Court set a dispositive motion schedule, memorializing that schedule in an order entered on February 3, 2021. (Docket No. 12.) The parties agreed that the Objection to Exemption would be held in abeyance while the claims between the Trustee and Auto Loan were litigated. The Trustee filed the Trustee's Motion on February 18, 2021. Auto Loan filed the Creditor's Motion on February 19, 2021.

On February 25, 2021, the Trustee filed a response to the Creditor's Motion. (Docket No. 16.) On March 5, 2021, Auto Loan filed a response to the Trustee's Motion. (Docket No. 17.) On March 12, 2021, the Trustee filed a reply in support of the Trustee's Motion. (Docket No. 18.)

The Court held oral argument on the Motions on April 12, 2021, and invited supplemental briefing at the conclusion of that argument. Auto Loan filed a supplemental brief on April 26, 2021. (Docket No. 19.) The Trustee filed her supplemental brief on the same date. (Docket No. 20.)

## LEGAL ANALYSIS

Pursuant to Section 544 of the Bankruptcy Code, the Trustee may "avoid any transfer of property of the debtor … that is voidable by," *inter alia*, "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists." 11 U.S.C. § 544(a)(1).

Pursuant to Section 549 of the Bankruptcy Code, "the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this

title or by the court." 11 U.S.C. § 549. The "estate" refers to the bankruptcy estate created on the petition date pursuant to Section 541(a) of the Bankruptcy Code, which provides that, save for a few exceptions not relevant here, property of a debtor's estate includes "…all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).

The term "transfer" is expressly defined by the Bankruptcy Code and is thus a matter of federal law. The definition of "transfer" includes "the creation of a lien," as well as "the retention of title as security interest." 11 U.S.C. 101(54)(A)-(B). However, in general, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed different simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 136 (1979). "Therefore, this court looks to Ohio law to determine the scope of [the debtor's] interest in the automobile." *Whittaker v. Ford Motor Credit Co. (In re Edney)*, 47 F.3d 1168 (table), 1995 WL 16883 (6th Cir. Jan. 17, 1995) (unpublished per curiam).

The central flaw in the Trustee's arguments is a threshold one: On the petition date, Kessler did not own the Vehicle. She had a contractual interest in acquiring the Vehicle, not a property interest.

**I.     The Debtor Did Not Have a Property Interest in the Vehicle on the Petition Date.**

In Ohio, property interests in motor vehicles are governed by the Ohio Certificate of Motor Vehicle Title Law, Ohio Rev. Code ("O.R.C.") § 4505, which controls over any conflicting provisions of the Uniform Commercial Code. *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St. 3d 513, 520, 751 N.E. 2d 1019 (2001). The relevant

7

portion of the statute provides:

> No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or there is delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505.032 of the Revised Code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.

O.R.C. § 4505.04(A). Following the plain text of this statute, the Ohio Supreme Court answered the question "whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title," *Saturn of Kings*, 92 Ohio St. 3d at 515, firmly in the negative: "Pursuant to R.C. 4505.04(A), title to and, thus, ownership of a motor vehicle in this context does not pass without issuance or delivery of the certificate of title." *Id.* at 520.

Years before *Saturn of Kings*, the Court of Appeals for the Sixth Circuit read Ohio law differently. In *Edney*, the Sixth Circuit applied Articles 2 and 9 of the Uniform Commercial Code (the "UCC") and concluded that when a debtor purchased a car from the dealer, there was at least a fleeting or theoretical moment in time in which the purchaser had a property interest in the car but the lien of the third-party lender had not yet attached. The court first applied Article 2 of the UCC:

> Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading.

O.R.C. § 1302.42(B). Based on this, the Sixth Circuit held that a buyer of a vehicle acquires an

8

20-05057-amk   Doc 21   FILED 03/31/22   ENTERED 03/31/22 16:45:14   Page 8 of 16

interest in the vehicle when she obtains possession from the dealer, even if the title is delivered later and elsewhere. *Edney*, 1995 WL 16883 at *3. The court then applied language from the version of Article 9 of the UCC then in effect in Ohio, O.R.C. 1309.14(A) (repealed), which is substantially similar to the current language in Ohio's enactment of Revised Article 9, UCC § 9-203, O.R.C. 1309.203(B) (eff. June 29, 2001), providing that a security interest does not attach and is not enforceable until the debtor has acquired rights in the collateral. *Edney* reasoned that this must mean that ownership comes first, not simultaneously with the transfer of the security interest.

*Edney* considered it irrelevant that the title and the notation of the lien on the title occurred simultaneously. The court held that what mattered was that both of those simultaneous acts occurred later (thirteen days later, in that case) than the delivery of the vehicle from the dealer to the purchaser. The court held that the creation of the lien was a transfer of an already-existing interest of the debtor in property, specifically rejecting the contention that the purchaser's and lender's interests "arose simultaneously." *Id.* at *4. *Edney* went so far as to characterize as "outlandish" the lender's contention that its interest arose at the same time as the purchaser's, and specifically at the moment of issuance of the certificate of title displaying the purchaser's ownership and the lender's lien. *Id.* Based on its determination pursuant to Ohio law that the debtor in that case acquired an interest in the vehicle upon possession, *Edney* concluded that the lender's purchase money security interest in the vehicle was avoidable as a preference pursuant to 11 U.S.C. § 547(b).

Six years later, in *Saturn of Kings*, the Ohio Supreme Court adopted the rule that *Edney* had labeled as "outlandish." While *Saturn of Kings* did not mention *Edney*, the language used by the Ohio Supreme Court in *Saturn of Kings* is universal: when the issue is one of title and

9

ownership, the right of bona fide purchasers, or the rights as between lienholders, as opposed to ancillary contractual rights and obligations such as risk of loss and insurance coverage, *see Saturn of Kings*, 92 Ohio St. 3d at 518 (citing *Hughes v. Al Green, Inc.*, 65 Ohio St. 2d 110, 19 O.O.3d 307, 418 N.E.2d 1355 (1981) and *Smith v. Nationwide Mut. Ins. Co.*, 37 Ohio St. 3d 150, 524 N.E.2d 507 (1988)), the Ohio Certificate of Motor Vehicle Title Law controls over the Uniform Commercial Code if the two conflict, *i.e.,* if effect cannot be given completely to both statutes. *Saturn of Kings* held that "title to and, thus, ownership of a motor vehicle . . . does not pass without issuance or delivery of the certificate of title." *Saturn of Kings*, 92 Ohio St. 3d at 520. The Ohio Supreme Court's decision, not *Edney*, is the one this Court must follow, notwithstanding that *Edney* was delivered by the Sixth Circuit Court of Appeals. "In construing questions of state law, a federal court must apply state law in accordance with the controlling decisions of the highest court of the state." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)).

If *Saturn of Kings* had been decided differently or never been decided at all, *Edney* decision would control instead and the Court's legal conclusion here would be different, just as occurred in the case of *Field v. Fifth Third Bank (In re Nasr)*, 191 B.R. 689 (Bankr. S.D. Ohio 1996), which was decided in the six-year gap between *Edney* and *Saturn of Kings*. In that case, the debtors purchased a vehicle and signed loan paperwork including a security agreement eight days prepetition,[3] and the certificate of title reflecting the bank's lien was issued eight days postpetition. The court held that the attachment of the lien was a violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(4) because, relying on *Edney*, the debtors had ownership rights in

---

[3] It is not clear from the recitation of facts in *Nasr* why the debtors in that case possessed the vehicle for two or three months prior to signing loan paperwork.

10

the vehicle on the petition date but no security interest had yet attached because the title reflecting that security interest had not yet been issued.

The Trustee also relies on *Drown v. Perfect (In Giaimo)*, 440 B.R. 761 (B.A.P. 6th Cir. 2010) (Harris, J.), but that case is inapposite here. The holding of that case is that UCC Article 9 governs the creation of security interests in motor vehicles, even though the Certificate of Motor Vehicle Title Law governs perfection of those interests. However, Article 9 does not define when *ownership* interests are acquired, which is the dispositive issue in this case. The bankruptcy appellate panel in *Giaimo* did not explore the issue of whether Article 2 or the Certificate of Motor Vehicle Title Law governs when a purchaser acquires an interest in a motor vehicle becomes property of the purchaser. *Giaimo* had no need to do so because in that case, it was undisputed that the vehicle was purchased more than a year before the debtor's bankruptcy filing.

The facts in this case are very similar to those in *Logan v. Chesrown Rapid Credit (In re Weaver)*, 131 B.R. 804 (S.D. Ohio 1991). In *Weaver*, the debtor-to-be entered into a retail installment contract and purchase agreement with a vehicle dealer on June 29, 1990, took possession of the related vehicle the same day, and then filed a bankruptcy petition on July 6, 1990. The clerk of court issued a title showing the dealer's lien (the dealer and lender in *Weaver* appear to have been the same entity) twelve days later, on July 18, 1990. The trustee sought to avoid the lien pursuant to sections 544, 547, and 549 of the Bankruptcy Code, and the bankruptcy court granted summary judgment in the trustee's favor. The district court reversed based on O.R.C. § 4505.04, substantially anticipating how the Ohio Supreme Court would rule ten years later in *Saturn of Kings*: "Under R.C. 4505.04, neither [the debtor] nor her estate acquired rights in the car until the certificate of title was issued." *Weaver*, 131 B.R. at 806. "It

follows that no transfer of [the debtor's] property or property of [the debtor's] estate occurred because, under R.C. 4505.04, until the certificate of title was issued, [the debtor] and her estate had no interest that could be transferred. The title was issued at the same time the lien was noted thereon." *Id.* at 807. *Edney* discussed *Weaver* and found it "unpersuasive." *Edney*, 1995 WL 16883 at *3. *Nasr* similarly declined to follow *Weaver* in light of *Edney*. *See Nasr*, 191 B.R. at 692. The Ohio Supreme Court, however, essentially adopted *Weaver's* reasoning as its own in *Saturn of Kings*.

The Court recognizes that other courts in this district have occasionally recognized ownership rights in motor vehicles in Ohio arising upon payment and possession, even after *Saturn of Kings*. In *Silagy v. Jay's Auto Sales (In re Jackson)*, 2006 WL 3064087 (Bankr. N.D. Ohio Oct. 23, 2006) (Kendig, J.), the court discussed both *Edney* and *Saturn of Kings* and concluded that *Edney's* holding that "the debtor obtains an ownership interest in the collateral upon its delivery," *Edney*, 1995 WL 16883 at *3, remained undisturbed by *Saturn of Kings*. *See Jackson*, 2006 WL 3064087 at *3. *Jackson* held that the certificate of title "only memorialized" the debtor's ownership of the vehicle, but that ownership, or at least an interest sufficient for a security interest to attach, had transferred once the debtors "had advanced value and taken possession of the car and were entitled to become the legal owners of the vehicle." *Id.* at *4. This Court finds that impossible to square with the clear concluding statement of *Saturn of Kings* that "title to and, thus, ownership of a motor in this context . . . does not pass without issuance or delivery of the certificate of title." *Id.* at 520.

On the petition date, whatever rights or interests that the Debtor held in the Vehicle were less than ownership rights of the kind to which a security interest can attach. She was the beneficiary of Klaben's contractual obligation to transfer the title to her. Pursuant to that

12

20-05057-amk    Doc 21    FILED 03/31/22    ENTERED 03/31/22 16:45:14    Page 12 of 16

contract, the Debtor did not have a contractual right to acquire the Vehicle free and clear; she had a contractual right to acquire the Vehicle subject to a lien, which is precisely what she received the day after the petition date. There was no gap period during which the Debtor owned the car either free and clear or subject only to an unperfected security interest avoidable by the Trustee. Indeed, the parties stipulated to this conclusion as a matter of fact. The parties agreed that on July 15, 2020, the *day after* the Debtor filed her chapter 7 case and created her bankruptcy estate, Klaben transferred ownership of the Vehicle to the Debtor. (Stipulations ¶ 8.) On the petition date, the Debtor did not have a legal interest in the Vehicle. Klaben did.

II. **Because the Debtor Had No Property Interest in the Vehicle on the Petition Date, It Did Not Become Property of the Estate and Auto Loan's Security Interest on the Vehicle Cannot Be Avoided Pursuant to Section 549.**

For almost all purposes, the bankruptcy estate created by the commencement of a bankruptcy case is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). None of the limited exceptions that allow postpetition-acquired property to come into a chapter 7 debtor's estate are applicable here. Therefore, because the Debtor did not acquire a property interest in the Vehicle before she filed her bankruptcy petition, the Vehicle did not become, and is not, property of the chapter 7 bankruptcy estate.

A transfer can only be avoidable pursuant to Section 549 of the Bankruptcy Code if it is "property of the estate." 11 U.S.C. § 549(a). Because the Vehicle is not and never was property of the estate, a security interest encumbering the Vehicle cannot be avoided as a postpetition transfer of property of the estate pursuant to Section 549. Therefore, the Trustee's avoidance claim pursuant to Section 549 must fail.

13

### III. Because the Debtor Had No Property Interest in the Vehicle on the Petition Date, a Hypothetical Judgment Lien Creditor or Execution Creditor of the Debtor as of That Date Could Not Obtain a Lien on the Vehicle and, Therefore, the Trustee Lacks the Power To Avoid any Unperfected Lien or Security Interest on the Vehicle as of the Petition Date Pursuant to Section 544(a)(1).

Because the Vehicle's title still remained in Klaben's name on the petition date, only a hypothetical judgment lien or execution creditor of Klaben, and not one of the Debtor, could have attached the Vehicle on the petition date. *See Morris v. Erieway, Inc.*, 93 Ohio App. 3d 239, 245, 638 N.E.2d 142, 146 (Ohio App. 8th Dist. 1994). In *Morris v. Erieway, Inc.*, a third-party buyer of vehicles from Defendant Erieway intervened and alleged an ownership interest in the vehicles that was senior to, and therefore free and clear of, the rights of Erieway's judgment creditor who had levied upon the vehicles. The buyer contended that Erieway's creditor could not levy on its vehicles. However, *Morris* concluded that because Erieway retained the certificates of title and was identified on those certificates as the title owner of the vehicles, Erieway's creditor could levy on those vehicles. "Erieway, Inc. is still the titled owner for the vehicles and the vehicles were subject to the levy of execution to satisfy Erieway, Inc.'s debt." *Id.,* 93 Ohio App. 3d at 245, 638 N.E.2d at 146.

Just as in *Morris v. Erieway, Inc.*, on the critical date, which in this case is the Debtor's petition date, Klaben remained the title owner on the certificate of title, not the Debtor. Therefore, if Klaben had a creditor who sought to levy on the Vehicle on July 14, 2020, that creditor could have. By implication, however, the Debtor's creditor, including her bankruptcy trustee as a hypothetical lien creditor, could not. The Vehicle did not become property of the Debtor until July 15, 2020, the day after the petition date when the Portage County Clerk of Court issued the Title. While property of the Debtor as of the time the Trustee filed this action, "the strong-arm power given to the Trustee by Section 544(a) of the Code was never designed to

14

and does not deal with any transfers other than transfers which occurred prior to the commencement of the case." *Meninger v. Harp (In re Stoops)*, 209 B.R. 1, 3 (Bankr. M.D. Fla. 1997). Therefore, the Trustee's avoidance action pursuant to Section 544(a) must fail.

IV. **Because the Vehicle is Not Property of the Estate, the Trustee May Not Sell It Pursuant to 11 U.S.C. § 363(b).**

The only property a bankruptcy trustee may use, sell, or lease pursuant to Section 363(b) is "property of the estate." 11 U.S.C. § 363(b). For all the reasons set forth in this Memorandum Decision, the Vehicle is not property of the Debtor's bankruptcy estate. Therefore, the Trustee's claim for an order authorizing her to sell the Vehicle must be denied.

V. **The Trustee's Reliance on an Alleged Violation of the Automatic Stay Pursuant to 11 U.S.C. §§ 362(a)(4) and (5) Fails.**

The Trustee's amended complaint does not contain an action seeking to avoid, or to determine as void *ab initio*, the security interest held by Auto Loan on the grounds that its creation, perfection, or enforcement is a violation of the automatic stay pursuant to 11 U.S.C. §§ 362(a)(4) and (5). Therefore, the Court determines that that argument raised in the Trustee's Motion for Summary Judgment is not properly before the Court.

In addition, with respect to the automatic stay imposed by Section 362(a)(4), which prohibits "any act to create, perfect, or enforce any lien against property of the estate," the Court has already determined that the Vehicle is not property of the estate and therefore there could not have been a violation of that stay provision.

With respect to Section 362(a)(5), which prohibits "any act to create, perfect, or enforce against property of the debtor any lien . . .", that stay provision is designed to benefit the Debtor, not the Trustee. As a result, the Trustee lacks standing to enforce that automatic stay provision.

15

*See In re New Era, Inc.*, 135 F.3d 1206, 1210 (7th Cir. 1998); 3 Collier on Bankruptcy ¶ 362.12, at 362-140 (16th ed. 2010).

## CONCLUSION

The Trustee cannot use her strong-arm powers under section 544 of the Bankruptcy Code to avoid the transfer of a lien interest in the Vehicle to Auto Loan, because the Vehicle was not property of the debtor on or before the petition date. Similarly, section 549 of the Bankruptcy Code does not allow the Trustee to avoid the transfer of the lien in the Vehicle to Auto Loan because it only prohibits unauthorized postpetition transfers of property of the estate, and the Vehicle is not and never was property of the estate. The Trustee's argument for authority to sell the vehicle pursuant to section 363 of the Bankruptcy Code necessarily fails.

The Court will enter a separate form of judgment granting the Creditor's Motion consistent with this Memorandum Decision. The Court's Order granting the Motion for Summary Judgment will not be deemed entered until the separate form of Order has been docketed by the Clerk.

# # #